## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EDWARD E. HOLLOMAN,

        Plaintiff,

v.

                                   Case No. 15-3067-JTM

DAN SCHNURR, ET AL.,

        Defendants.

### MEMORANDUM AND OMNIBUS ORDER

Plaintiff Edward E. Holloman, an inmate confined at El Dorado Correctional Facility (EDCF) in El Dorado, Kansas, filed this pro se civil rights complaint against EDCF staff for depriving him of water for sixteen hours. Because Holloman is a prisoner, federal statute requires the court to screen his complaint and to dismiss it or any portion thereof that is frivolous, fails to state a claim upon which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915(A)(a) and (b); 28 U.S.C. § 1915(e)(2)(B). Before screening the complaint, the court will first consider Holloman's Application to Proceed Without Prepayment of Fees. (Dkt. 2).

### I.      Application to Proceed Without Prepayment of Fees

The fee for filing a civil action in federal court is $400.00, which consists of the statutory fee of $350.00 under 28 U.S.C. § 1914(a) plus an administrative fee of $50.00. For one granted leave to proceed without prepayment of fees, the fee is $350.00. After reviewing Holloman's application, the court grants it. This, however, does not mean that Holloman is relieved of the obligation to pay the full fee of $ 350.00 for filing a civil action. 28 U.S.C. § 1915(b)(1). Instead,

this merely entitles him to pay the filing fee in installment payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2).

Holloman, however, must pay an initial partial filing fee. Section 1915(b)(1) requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action. As required, Holloman attached an "Inmate Account Statement" in support of his application. Upon examining his inmate account, the courts finds Holloman's average monthly deposit during the relevant period was $8.55, and the average monthly balance was $290.69. The court therefore assesses an initial partial filing fee of $58.00, twenty percent of the average monthly balance, rounded to the lower half dollar.

## II.    Screening

### A.  Legal Standard

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir.1997). A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The complaint must offer "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007). The court accepts all well-pleaded allegations in the complaint as true.

*Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). Still, "when the allegations in a

complaint, however true, could not raise a claim of entitlement to relief," dismissal is

appropriate. *Twombly*, 550 U.S. at 558. To avoid dismissal, the complaint's "factual allegations

must be enough to raise a right to relief above the speculative level" and there must be "enough

facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. The Tenth Circuit

Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain

what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's

action harmed (the plaintiff); and, what specific legal right the plaintiff believes the defendant

violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492

F.3d 1158, 1163 (10th Cir. 2007).

In order to state a claim of cruel and unusual punishment based on the conditions of

confinement, the plaintiff has to establish "deliberate indifference." *Wilson v. Seiter*, 501 U.S.

294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Deliberate indifference includes

both an objective and subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir.

2005). To satisfy the objective component, a prisoner must allege facts showing he or she is

"incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*,

511 U.S. 825, 834 (1994); *Martinez*, 430 F.3d at 1304. With regard to the subjective component,

the plaintiff must allege that the defendant acted with a culpable state of mind. *Farmer*, 511 U.S.

at 834, 837 ("[A] prison official may be held liable under the Eighth Amendment for denying

humane conditions of confinement only if he knows that inmates face a substantial risk of

serious harm and disregards that risk by failing to take reasonable measures to abate it.");

*Despain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001) (Deliberate indifference "requires both knowledge and disregard of possible risks."). It is not enough to allege that the official should have known of the risk of harm. *Farmer*, 511 U.S. at 837-38.

### B.  Allegations and Claims

Holloman's allegations and exhibits attached to his complaint indicate the following facts for this lawsuit. On August 29, 2014, at approximately 2:50 p.m., Holloman was placed on crisis level and put in Cell 128 H-pod. Complaint at 14.[1] He was on a hunger strike and suicide watch. Because he was upset, he put water under his door. As a result, EDCF staff turned off his water at approximately 3:00 p.m.

At approximately 5:50 p.m., Lt. Brown stopped by and told Holloman that his water would be turned on if he would not flood his cell. Holloman replied, "I'm cool. I don't want it on." *Id.*

At approximately 6:40 p.m., Captain Trimal stopped by Holloman's cell and posted a water restriction notice on Holloman's cell door. Captain Trimal told Holloman that his water would be turned back on at 11 o'clock, to which Holloman said, "I don't want it on." *Id.*

Segregation officer (SO) Spear worked the 6 to 10 shift on August 29, 2014. *Id.* at 4. He never offered Holloman water or read the notice. *Id.* at 6. Holloman claims that no one read the notice or offered him any water until 6:20 a.m. the next morning. *Id.* at 14.

At approximately 5:10 a.m. on August 30, 2014, Holloman asked SO Seiser when he would get some water. *Id.* Seiser replied that he did not know if Holloman was supposed to get any water. Holloman then asked Seiser about the water restriction notice on his door. At this time, Master Sgt. Hunt stopped by and Holloman asked Hunt if he knew about the water

---

[1] Because Holloman did not consistently paginate the complaint, page number references to Dkt. 1 are to the PDF page numbers as they appear in the court's record. Thus, the reference to "Dkt. 1 at 14" refers to page 14 of the 19-page PDF document.

restriction. Hunt said "he didn't know." *Id.* Hunt told Holloman that he should have asked for water and Holloman replied, "I'm on suicide watch/hunger strike and I don't got to ask – you must provide it to me. My water off (sic)." *Id.* Hunt or Seiser left to check the computer regarding the water restriction procedures. Seiser also called the lieutenant, who told him that water should have been offered to Holloman every four hours. Seiser admitted he erred and offered Holloman water at this time. *Id.* at 15.

At 6:20 a.m., Holloman told Captain Castro about the water deprivation incident.[2] Captain Castro said he would email his superiors. He also ordered the officers who work the 6 to 2 shift to offer Holloman water every hour until his water was turned back on and to allow Holloman to flush his stool. *Id.*

At 2:00 p.m., Holloman spoke to Master Sgt. Sullivan about what happened and told him he wanted to see Lt. Brown. *Id.* Spears walked by and said he offered Holloman water twice. Holloman called Spears a liar and said Lt. Brown will clear this up. When Lt. Brown showed up, he admitted that he forgot to pass the water restriction notice to the other officers and apologized that this happened to Holloman. *Id.* at 6, 15.

At approximately 10:40 on August 30, 2014, after Holloman told him that he would file a a cruel and unusual claim, Master Sgt. Hunt "snapped and bang[ed] [Holloman's] door" and yelled "I'm going to get you and I'll have all other shift . . .  do it as well. . . ," in front of everyone in H-pod. *Id.* at 16.

As to defendant Graves, Holloman alleged that "[she] received narratives on this issue. She had asked me what was I wanting to settle this. However, I was on suicide watch and had to wait til I get off to talk. She will testify to this." *Id.* at 6.

---

[2] Holloman's complaint identified the officer who spoke to him at 6:20 a.m on August 30, 2014 as Captain Castro on page 6, but later called him "Captain Caesal if spelled right . . ." on page 15. The court will refer to this defendant as Captain Castro.

Holloman asserts three Eighth Amendment violations. Count I alleges that Master Sgt. Hunt never offered Holloman water and threatened him. Count 2 alleges that Lt. Brown "forgot to pass the order on to [the] other officers." Count 3 alleges that Spear, who worked the 6 to 10 shift on August 29, 2014, never gave Holloman water or allowed him to flush his stool. Holloman seeks $2 million for mental and physical cruelty, $3,000 for the verbal threat, and Hunt's job. *Id.* at 5, 16.

### C.  Discussion

The court finds the complaint fails to state a claim which entitles Holloman to § 1983 relief for the following reasons. As to Holloman's claim of deprivation of water for sixteen straight hours, it is deficient in five ways. First, the deprivation period covered one meal and Holloman admits he was offered tea with his supper. *Id.* at 7. Courts have held there is no § 1983 claim if a prisoner was offered beverages at meal times. *Tesch v. County of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998) (denial of drinking water for two days is not a constitutional violation when inmates receive beverages with each of his three daily meals); *Muhammad v. Wilson*, No. 05 C 743, 2006 WL 2413710, at *2–3 (N.D. Ill. Aug.16, 2006) (broken plumbing for seven days where plaintiff was given three meals a day, including beverages with each meal, "was an inconvenience" and "did not amount to a constitutional violation"); *Mims v. Hardy*, No. 11 C 6794, 2013 WL 2451149, at *9 (N.D. Ill. June 5, 2013) (lack of access to drinking water from the sink in his cell for 45 days does not rise to the level of a constitutional violation when prisoner had access to some form of beverage three times a day as part of his regular meal schedule, was able to fill his water bottle using a hose, and had the ability to purchase beverages from the prison commissary).

6

Second, sixteen hours without a flushable toilet does not rise to the level of an Eighth Amendment violation. *Scruggs v. SinClair*, No. 3:16-CV-039 JD, 2016 WL 344534, at \*2 (N.D. Ind. Jan. 27, 2016) (claim for lack of running water in his cell for eleven days does not state a claim for which relief can be granted); *Easter v. Cooper*, No. 91 C 4520, 1995 WL 109343, at \*3 (N.D.Ill.1995) (no running water for seven days constitutes an inconvenience but does violate Constitution). Courts have recognized that inmate exposure to sewage can constitute a serious risk to health. *Shannon v. Graves*, 257 F.3d 1154, 1168 (10th Cir. 2001). The frequency and duration of the condition, as well as the measures employed to alleviate the condition, must be considered in assessing whether the condition is sufficiently serious to support a constitutional claim. *Id.* Here, Holloman alleges no facts indicating that what occurred was other than a brief, isolated incident. Courts in this circuit have found that brief exposure to excrement contained in a toilet is not sufficiently serious to implicate constitutional protection. *Rainey v. Thorstad*, No. 12-CV-00945-CMA-MEH, 2012 WL 5931743, at \*7 (D. Colo. Oct. 29, 2012), report and recommendation adopted sub nom. *Rainey v. Thorsted*, No. 12-CV-00945-CMA-MEH, 2012 WL 5931711 (D. Colo. Nov. 27, 2012); *Purkey v. McKune*, No. 01–3019–JWL, 2005 WL 61497, at \*4 (D. Kan. Jan.11, 2005) (finding that an inmate's 72–hour exposure to a toilet containing human waste in a cell with poor ventilation did not violate the Eighth Amendment).

Third, Holloman's detailed account of his conversation with defendants Seiser and Hunt indicate they were not even aware that Holloman's water had been turned off. Thus, his claims against these defendants fail to state a subjective deliberate indifference to his condition of confinement. Indeed, Holloman's allegation that Brown admitted "he forget to pass the water restriction on to [the other defendants]" (Complaint at 6) and that no one read the notice further indicates a lack of deliberate indifference.

Fourth, Holloman's claims against Captain Trimal, Captain Castro, Lt. Brown, Master Sgt. Sullivan, and Graves fail to show personal participation in the deprivation of water. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (direct personal participation in the inactions upon which the complaint is based required). Captain Trimmal ordered Holloman's water off because he had flooded his cell, but there are no allegations that he ordered the guards not to offer plaintiff drinking water. Lt. Brown forgot to pass the water restrictions onto the other officers, but there are no allegations that he personally deprived Holloman of water. Captain Castro, upon being informed of the deprivation, ordered officers to give Holloman water every hour until his water was turned on and to allow him to flush his stool. *Id.* at 6, 15. Likewise, Master Sgt. Sullivan and Graves found out about the deprivation after it happened. Simply put, the allegations against these defendants lack sufficient personal participation in the sixteen-hour deprivation of water. These defendants' supervisory status also does not provide a basis for § 1983 liability. *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (the doctrine of respondeat superior does not operate in a suit brought under § 1983); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability).

Fifth, Holloman fails to allege any physical injury. 42 U.S.C. § 1997e (e) provides: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Holloman's allegation of physical cruelty is wholly conclusory. *See Dickinson v. New Mexico Behavioral Health Institute*, 335 Fed. Appx. 729, 734 (10th Cir. 2009) (where plaintiff alleged unit was unsanitary and smelled of urine and feces, he could not recover compensatory damages absent proof of physical injury from the conditions).

As to Holloman's claim of verbal threats by Master Sgt. Hunt, it is insufficient to state a § 1983 claim. "Mere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alavarez v. Gonzales*, 155 Fed.Appx. 393, 396 (10th Cir. 2005) (*citing Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992)); *McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir.2001) ("[A] cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); *Ragland v. Romer*, 73 F.3d 374 (10th Cir.), *cert. denied*, 518 U.S. 1025 (1996) ("Courts have consistently held that acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (claim that sheriff laughed and threatened to hang prisoner failed to state a constitutional deprivation under § 1983). Here, Master Sgt. Hunt's comments, although inappropriate, do not suggest a show of deadly force, thus failing to create "terror of instant and unexpected death."

Lastly, although Holloman named Warden Schnurr as a defendant in the caption, he failed to mention Schnurr in the body of the complaint. The court assumes Holloman named Schnurr because he is the warden and he denied Holloman's grievance. Section 1983 does not authorize liability under a theory of respondent superior or for the denial of an administrative grievance. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (affirming dismissal of claims against warden and director of correctional facilities for beating because supervisor status by itself is insufficient to support § 1983 liability); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)(A "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."). *See also Medcalf v. State of Kan.*, 626 F. Supp. 1179, 1184 (D. Kan. 1986) (§ 1983

claims for violation of Eighth Amendment rights may not be brought against a warden in his official capacity).

### D. Conclusion

The court finds the deprivation of drinking water and a flushing stool were relatively brief and reasonably related to legitimate correctional goals. Indeed, Holloman does not deny that he slept the majority of the night. He argues instead that prison staff should have woken him up and offered him a drink of water and water to flush his stool. Complaint at 7. The court finds this argument lacks merit. Given the time and deprivation period, disturbing Holloman's sleep to offer water would have been arguably worse than the claimed deprivation.

Generally, the court will give a plaintiff an opportunity to show cause why his complaint should not be dismissed for failing to state a claim for relief and amend his complaint before dismissal. In this case, however, given the nature of the deficiencies, the court finds that it is patently obvious that Holloman could not prevail on the facts alleged and allowing him an opportunity to amend his complaint would be futile. *McKinney v. State of Okl., Dep't of Human Servs., Shawnee OK*, 925 F.2d 363, 365 (10th Cir. 1991) (although the preferred practice is to accord a plaintiff notice and an opportunity to amend his complaint before dismissal, a sua sponte dismissal is not reversible error when it is "patently obvious" that the plaintiff could not prevail on the facts alleged and allowing an opportunity to amend would be futile). Accordingly, the court will dismiss this complaint without giving Holloman an opportunity to amend.

**IT IS THEREFORE ORDERED** that Holloman's application to proceed in forma pauperis (Dkt. 2) is **GRANTED**. The court assesses Holloman an initial partial filing fee of $58.00. The court directs the Finance Office of the facility where Holloman is currently confined to collect the initial partial filing fee from his account and pay it to the Clerk of Court. After

payment of the initial partial filing fee (or immediately if no funds are available for that payment) the agency having custody of Holloman is directed to make monthly payments of 20 percent of the preceding month's income credited to Holloman's account to the Clerk of Court. The agency having custody of the plaintiff shall forward these payments each time Holloman's account exceeds $10, until the filing fee of $350 is paid in full. The Clerk is directed to mail a copy of this order to Holloman's place of confinement, to the attention of the Trust Fund Office.

**IT IS FURTHER ORDERED** that this action is DISMISSED.

**IT IS SO ORDERED** this 26th day of May 2016.

s/ J. Thomas Marten
J. THOMAS MARTEN, Judge